# Guy v. Interstate Transit, Incorporated.

(Decided June 14, 1932.)

M. L. MARSHALL and WOODWARD, HAMILTON & HOBSON for appellant.

SHACKELFORD MILLER, JR., for appellee.

Opinion of the Court by Creal, Commissioner—Reversing.

On February 19, 1930, James Guy, a colored man, purchased from the Interstate Transit, Inc., a ticket for passage over bus lines from Louisville to New Orleans. He left Louisville about 1 p. m. on that date and arrived at Nashville about 8:35 p. m., where he changed to another bus for Birmingham, arriving there about 6 a. m. the following day. On arriving he made inquiry of the agent at the bus station for the bus to New Orleans

and it was pointed out to him at another station a short distance away. He went to this bus and exhibited his ticket to the driver, but was refused permission to enter. He went back and informed the agent at the station that they had refused to carry him on the bus and was told that he would have to wait for a bus on the following morning. He was told by some porters around the station that he could get another bus within a few hours, but this proved to be false information, and he decided to make the trip to New Orleans by rail, as he was in a hurry to reach the bedside of a very sick brother. In attempting to go to the railroad station in a taxicab, he was robbed of all his money which necessitated his return to the bus station, where he remained until the next morning. On the morning of the 21st he entered the bus for New Orleans, but later the driver came in and asked to see his ticket. When shown the ticket the driver informed him that he could not carry him and that he would have to get off. This he did. He thereupon pawned his watch to secure railroad fare back to Louisville.

He instituted this action in the Jefferson circuit court against the Interstate Transit, Inc., and the Colonial Stages, alleging in his petition the foregoing and other facts, setting up the contract of defendants to carry him as a passenger and the breach thereof. In addition to the facts enumerated, plaintiff alleged that he informed defendant's agent from whom he purchased the ticket that he desired to make the trip as rapidly and as comfortably as possible, as he himself was suffering from diabetes and that he was going to see his brother who was very ill; that he was informed by the agent of defendants that it operated busses to New Orleans and would furnish quick, comfortable, and certain transportation and also gave him a schedule showing the time the bus departed from Louisville and the time of its arrival at New Orleans as well as the time of arrival and departure at intervening points, Nashville and Birmingham, where he would make the changes.

The court sustained a motion to quash the return on the summons as executed against the Colonial Stages, which it appears was only a trade-name used by the Interstate Transit, Inc. By answer, the Interstate Transit, Inc., denied that it operated bus lines to Birmingham or New Orleans or to any point south except to Nashville,

Tenn., and denied all other allegations of the petition except that it sold to plaintiff a ticket and by a second paragraph affirmatively alleged that at the time referred to in the petition it operated a bus line from Louisville to Nashville; and the Atlantic-Pacific Stages operated a bus line from there to Birmingham; that the Old South Coaches operated a bus line from Birmingham to New Orleans; that these companies are separate entities in which it had no ownership or control; that at the time referred to in the petition, it sold to plaintiff a ticket by which it promised and agreed to transport him by motorbus from Louisville to Nashville and no further; and at the same time sold on behalf of the Atlantic-Pacific Stages a ticket for transportation over its bus lines from Nashville to Birmingham; and also sold to plaintiff on behalf of the Old South Coaches a ticket from Birmingham to New Orleans; that in selling a ticket from Nashville to Birmingham and from Birmingham to New Orleans, it acted as agent for the companies mentioned and that under provisions and stipulations in the ticket, it was agreed that the defendant acted as agent only and assumed no responsibility beyond its own lines from Louisville to Nashville; and, further, that defendant reserved the right to reserve all seats on the bus and to make changes in such reservations at its discretion; that pursuant to the contract, it agreed to transport plaintiff from Louisville to Nashville on February 19, with speed and comfort and in all respects fully performed its contract with him; that he thereafter became a passenger of the Atlantic-Pacific Stages and was transported by that company with safety, comfort, and convenience to Birmingham; that all the acts complained of in the petition were subsequent to the completion of its contract of transportation with plaintiff. By reply, denying the affirmative allegations of the answer, the issues were completed.

A trial before the jury resulted in a verdict in favor of plaintiff for the sum of $500. Judgment was entered accordingly, but later the court sustained defendant's motion and grounds for a new trial and set aside the verdict and judgment. Thereafter, it was agreed between the parties that the case be heard and decided by the court upon the law and facts without the intervention of a jury and that the court return a separate finding of law and facts and that the evidence heard on behalf of the parties on the former trial be considered

as evidence on the hearing before the judge. In accordance with the agreement of parties, the court made and entered a separate finding of facts and law and adjudged that plaintiff's petition be dismissed and he has appealed.

In summing up the finding of law, it is said:

"Damages for defendant's breach of contract are limited to his expense and loss of time and does not include humiliation or mortification. The evidence fails to show any damage for expense or loss of time. Judgment will be entered for defendant."

The court's finding of facts is, in substance, that appellee, defendant below, operated long-distance busses in conjunction with other bus companies under the trade name of the "Colonial Stages" and carried the name of "Colonial Stages" on its office in Louisville and also on its tickets. Appellant, plaintiff below, was advised by defendant's agent that he could make the trip from Louisville to New Orleans on the schedule hereinbefore referred to, but was told and understood that it would be necessary to change busses at Nashville and Birmingham. Appellant purchased and paid $16.50 for a ticket issued by appellee which carried the following statement, "Good for one Interstate trip from Louisville, Ky., to New Orleans, La.," and also had attached a coupon for identification which provided: "This check must be retained by the passenger until final destination is reached and must be presented to the driver on request. Destination, New Orleans, La." Both the ticket and coupon had across the top in large letters, "Colonial Stages." The ticket carried the name "Interstate Transit, Inc.," and printed on the ticket were the following provisions:

"Good for one continuous passage as indicated below when officially stamped on back, starting on date indicated hereon, subject to the tariff rules and regulations of the respective companies furnishing the transportation, and the following conditions to which the passenger hereby agrees.

"In issuing this ticket for transportation over the lines of other carriers, the company acts as agents only and assumes no responsibility beyond its own respective line.

"The company reserves the right to provide transportation for passengers in cars or busses

other than its own, in which event it acts only as agent for passenger and operator of such cars or busses in arranging transportation between them and assumes no responsibility for the acts or negligence of such other operator or transportation company."

After being properly and satisfactorily transported to Birmingham, appellant talked to the station agent and was advised that he would have to go to another bus station about a block away to catch the bus for New Orleans, where he went and at the proper time attempted to board the bus. The driver thereof looked at the ticket presented, but refused appellant transportation thereon although other passengers were admitted to the bus upon which appellant was refused transportation. He remained in Birmingham 24 hours and again attempted to board the bus for New Orleans and was again refused transportation by the driver without any explanation. He thereupon returned to Louisville by train.

The Interstate Transit, Inc., at the time operated a bus line from Louisville to Nashville, which was the end of its line in the proposed transportation from Louisville to New Orleans. Appellee was carried from Nashville to Birmingham by the Atlantic-Pacific Stages, a separate corporation over which appellee had no control; the proposed transportation from Birmingham to New Orleans was by Old South Coaches, a corporation separate and distinct from appellee and also distinct from the Atlantic-Pacific Coaches, and over which appellee had no control. The drivers of the two busses in Birmingham who refused transportation to appellant were not employees of appellee but were employees of the Old South Coaches. About October 17, 1913, appellee acquired and at the time of the trial owned the controlling interest in the Atlantic-Pacific Stages.

As a matter of law, the court found in substance that appellee engaged to carry appellant to New Orleans and failed to do so and such failure constituted a breach of contract; that the act of the bus company at Birmingham in refusing to transport appellant to New Orleans and in ordering him from its bus was an unlawful act on the part of that company for which appellee is not liable for an action in tort, but had the refusal or ejection taken place on appellee's lines, it would be liable in tort arising out of its contract relations with appellant; that the find-

ing is in accord with the common law which has not been modified by statute and still prevails, and for reasons indicated the motion for new trial was sustained and the present finding was made in favor of appellee.

At the outset it may be said that the correctness of the court's finding of law must necessarily depend upon the correctness of the finding of facts. If, in fact, appellee's agent contracted to carry appellant over its lines to Nashville and as agent of other companies sold him tickets over other lines to complete the transportation to New Orleans, then the correctness of the finding might be conceded, but it must not be overlooked that appellant testified that appellee's agent at Louisville contracted to carry him to New Orleans without any notice or even a word to indicate that a contract for transportation beyond Nashville was made on behalf of other companies. The ticket filed in evidence for transportation from Birmingham to New Orleans shows a perforated line at the top of the ticket from which other parts of the ticket have been torn off, and this bears at the top in large and prominent letters the words, ''Colonial Stages, Interstate Transit, Inc:'' There is nothing on this ticket to indicate that any company other than appellee would have part in the transportation from Louisville to New Orleans.

According to the evidence of appellant, he was told that he would change busses at Nashville and Birmingham, but in the absence of other information, it would not necessarily be inferred thereby that he would change to busses of other companies. Not only does he testify that nothing was said about transportation over lines of other companies, but he asked if appellee carried colored people and about the schedule, telling of the serious illness of his brother and of his own illness, and the agent said, ''We can get you through by 9 the next night.''

The agent testified that he told appellant that he would change to connecting carriers and told him the names of the carriers, yet the ticket itself is an undertaking on the part of appellee to transport the passenger from Birmingham to New Orleans. As a general rule the mere sale of an ordinary coupon ticket by a carrier over its own and connecting lines does not render the initial carrier liable for acts of agents or servants of connective carriers, and especially is this true where by terms of the contract the initial carrier's liability is limited to its own lines. While the ticket in evidence appears

to be a portion of a coupon ticket, it is not for transportation over "Old South Coaches," but on its face is an undertaking of appellee to carry appellant from Birmingham to New Orleans.

The prevailing doctrine in this state is that as between carrier and passenger the ticket is only a memorandum of the contract for carriage, the terms and details of which have been agreed upon before the delivery of the ticket. Louisville & N. v. Sandlin, 209 Ky. 442, 272 S. W. 912; Illinois Central Ry. Co. v. Fleming, 148 Ky. 473, 146 S. W. 1110; Lexington & E. Ry. Co. v. Lyons, 104 Ky. 23, 46 S. W. 209, 20 Ky. Law Rep. 516; Illinois C. Ry. Co. v. Jackson, 117 Ky. 900, 79 S. W. 1187, 25 Ky. Law Rep. 2087; Illinois C. Ry. Co. v. Roberts, 148 Ky. 478, 146 S. W. 1113.

If the ticket in this instance correctly sets out the terms of the real contract, then it is an undertaking of appellee to transport appellant from Louisville to New Orleans; but if it does not, then the conflicting evidence made an issue for the jury as to the terms of the contract entered into between the parties to this action. According to appellant's theory which finds strong support in evidence, appellee did contract to furnish him transportation for the entire journey, and if it did, then it is liable not only for loss of time and expenses of the passenger arising out of a breach of the contract, but also for mortification and humiliation suffered by appellant growing out of the refusal to furnish him transportation by denying admission to and in ejecting him from the busses. Lexington & E. v. Lyons, supra; Chesapeake & O. Ry. Co. v. Gatewood, 155 Ky. 102, 159 S. W. 660; Illinois Central R. R. Co. v. Fleming, supra. Evidence of appellee that he was told by the driver of the bus on the morning of February 21 that he would not be carried and would have to get off is uncontradicted. This was equivalent to ejecting him from the bus. Reasor v. Paducah & Illinois Ferry Co., 152 Ky. 220, 152 S. W. 222, 43 L. R. A. (N. S.) 820.

If appellee had sold to appellant a coupon ticket for passage over its own lines to Nashville and then over connecting carriers between there and the point of destination, or if by reason of some unexpected fortuity it became necessary to provide transportation over lines of another in order to carry out its own contract, then the printed provisions of the ticket pleaded as a defense

486

might afford it protection as against the acts of other carriers. But appellee's agent knew when he sold the ticket to appellant the facilities that would be used in the transportation, and if he failed to disclose the facts, or if by express representation or by acts and conduct amounting to a representation he held his company out as assuming the obligation to transport appellant to New Orleans, or if he contracted for his company to undertake the entire obligation, then it would be a hard and unconscionable rule that would permit it to escape liability on the theory that acts complained of were committed by some undisclosed principal for which it was acting as agent. A party should not be permitted to assume one attitude when making a contract and another attitude when charged with a breach thereof.

The issue made by pleading and evidence as to the nature and terms of the contract was submitted to a jury under and appropriate instruction, and its verdict should not have been set aside by the lower court on the grounds stated in the judge's findings.

Judgment reversed for proceedings consistent with this opinion.

Whole court sitting.